UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIAN RAKO,<br>　　　　Plaintiff,<br>　　v.<br>VMWARE LLC, et al.,<br>　　　　Defendants. | Case No. 25-cv-05142-SVK<br><br>**ORDER ON MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 17, 18, 44 |

**I.   INTRODUCTION AND BACKGROUND**

This background discussion is taken primarily from the allegations of the Complaint. Dkt. 1 – "Complaint". Plaintiff Sebastian Rako, appearing *pro se*, worked as a sales professional for Defendant VMware LLC ("VMware") from approximately August 2021 until June 2022. *See id.* ¶¶ 1, 16, 40. Plaintiff claims that VMware suspended and then terminated his employment after he reported that Defendant Kaiser Aluminum Corporation ("Kaiser") had defrauded VMware under a license issued by VMware to Kaiser. *See id.* ¶¶ 1, 33-40.

Plaintiff filed the Complaint in this case on June 18, 2025. The Defendants are VMware and its employees Michael Brewster and Jeremy Hoke, and Kaiser and its employees Mike Wood and Tami Mills. The Complaint contains four causes of action: (1) retaliation in violation of the False Claims Act (31 U.S.C. § 3730(h)); (2) retaliation in violation of California Labor Code § 1102.5; (3) civil conspiracy to retaliate against whistleblower and facilitate wire fraud; and (4) wrongful termination in violation of public policy. The first, second, and fourth causes of action are asserted against VMware only. The third cause of action is asserted against all other Defendants. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 4, 11, 14, 46.

Now before the Court are three fully-briefed motions to dismiss the Complaint: (1) the motion to dismiss filed by VMware, Brewster, and Hoke (Dkt. 17 – "VMware motion to

1 dismiss"); (2) the motion to dismiss filed by Kaiser and Wood (Dkt. 18 – "Kaiser motion to
2 dismiss"); and (3) the motion to dismiss filed by Mills (Dkt. 44 – "Mills motion to dismiss").
3 These motions are suitable for determination without a hearing. Civ. L.R. 7-1(b). For the reasons
4 discussed below, VMware's motion to dismiss the first cause of action for retaliation in violation
5 of the False Claims Act ("FCA") is **GRANTED WITH LEAVE TO AMEND**. VMWare's
6 motion to dismiss the third (civil conspiracy) and fourth (wrongful termination in violation of
7 public policy) causes of action is also **GRANTED WITH LEAVE TO AMEND** to the extent
8 those causes of action are based on Plaintiff's deficient FCA retaliation claim. Because Plaintiff
9 bases his assertion that this Court has original subject matter jurisdiction solely on his FCA
10 claims, the Court does not reach Defendants' other arguments as to the other causes of action at
11 this time and therefore **DENIES WITHOUT PREJUDICE** the remaining portions of VMware's
12 motion to dismiss as well as the motions to dismiss filed by Kaiser and Mills. Defendants may re-
13 assert those arguments as appropriate if Plaintiff files a First Amended Complaint.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## III. DISCUSSION

### A. COURT ORDER re Plaintiff's "Notices of Errata" With Regard to Opposition Briefs

On September 10, 2025, Plaintiff filed "Notices of Errata" in connection with the briefs he filed in opposition to the VMware and Kaiser motions to dismiss, stating that those opposition briefs contained "inadvertent citation errors." Dkt. 55, 56. The Notices of Errata were filed almost six weeks after Plaintiff filed the relevant opposition briefs and only after VMware and Kaiser noted in their reply briefs that Plaintiff's opposition briefs cited non-existing caselaw. *See* Dkt. 37 at 1; Dkt. 38 at 4-5. Plaintiff's Notices of Errata provided "corrected" citations, which in most instances differed substantially from the original citations, including the case names, issuing courts, and dates. *Id.*

Although the Court recognizes that Plaintiff came forward and attempted to correct the record, it is concerned that Plaintiff may have relied on Artificial Intelligence ("AI") to identify legal authorities without checking that the authorities exist and were accurately characterized. Under the circumstances of this case, the Court finds it appropriate to **ORDER** as follows:

Parties, including *pro se* parties, and counsel shall not file or otherwise present to the Court any briefs, pleadings, materials, other documents, or argument which contain AI-hallucinated citations to law, case or legal citations which are fictitious or non-existent, or any assertions of law or fact that cannot be corroborated. The failure of a *pro se* party or counsel to confirm or double-check the accuracy, veracity, or even existence of a case or legal citation (or assertion of fact) created by an AI tool is grounds for potential sanctions. In light of Plaintiff's previous citations to non-existent cases in this litigation, **IN ALL FUTURE FILINGS IN THIS CASE, PLAINTIFF MUST INCLUDE A FOOTNOTE FOR EACH CITATION LOCATED THROUGH AI CONFIRMING THAT THE CITED AUTHORITY WAS LOCATED THROUGH AI AND THAT PLAINTIFF HAS VERIFIED THE EXISTENCE AND ACCURACY OF THE**

**CITATION BEFORE INCLUDING IT IN HIS FILING.** This information shall appear in a footnote for each such citation, as follows: "Located through AI; Checked." This requirement applies to any cited authority Plaintiff locates using any tool labelled as AI, generative AI, language model, natural language processing tool, machine learning tool, artificial neural network, deep learning neural network, or any other automated generator of text.

### B. First Cause of Action: Retaliation in violation of False Claims Act (31 U.S.C. § 3730(h))

The first cause of action is asserted against VMware only and alleges that VMware violated the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), by taking various actions against Plaintiff, including terminating his employment, in retaliation for his attempts to stop what he believed were violations of the FCA. Dkt. 1 ¶¶ 47-66.

The FCA "was enacted with the purpose of combating widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government." *Moore v. Cal. Institute of Tech.*, 275 F.3d 838, 844 (9th Cir. 2002) (citation and internal quotation marks omitted). "The FCA imposes significant civil liability on any person who ... (A) 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval,' (B) 'knowingly makes, uses, or causes to be used, a false record or statement material to a false or fraudulent claim,' or (C) 'conspires to commit a violation of [the FCA].'" *Winter ex rel. United States v. Garden Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020) (quoting 31 U.S.C. § 3729(a)(1)).[1]

The FCA contains an anti-retaliation provision which (as also amended in 2009) states that

---

[1] 2009 amendments the FCA "expanded the scope of conduct for which persons and organizations can be liable." *Amphastar Pharms. Inc. v. Aventis Pharma SA*, No. EDCV-09-0023 MJG, 2012 WL 5512466, at *10–11 (C.D. Cal. Nov. 14, 2012). By expanding liability from any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government" to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," "[t]he amendment effectively abrogated the Supreme Court's decision in *Allison Engine Co. v. United States ex rel. Sanders,* 553 U.S. 662, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008), which held that proof of intent to defraud is an element of a false statement claim." *Id.* at *11. "Rather, liability now attaches merely so long as a false statement is material to a false or fraudulent claim." *Id.*

"[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

An employee must prove three elements in a FCA retaliation claim: (1) the employee engaged in conduct protected under the statute; (2) the employer knew that the employee engaged in protected conduct; and (3) the employer discriminated against the employee because she engaged in protected conduct." *Mooney v. Fife*, 118 F.4th 1081, 1089 (9th Cir. 2024).

VMware argues that Plaintiff has failed to state a claim for retaliation in violation of the FCA because the complaint does not contain sufficient and plausible factual allegations that (1) Plaintiff engaged in activity protected under the statute or (2) VMware knew that Plaintiff was engaged in protected activity. Dkt. 17 at 6-13.

### 1. Protected activity by Plaintiff

VMware argues that Plaintiff fails to plausibly allege that he engaged in protected conduct. Dkt. 17 at 6-10. In opposition to the motion to dismiss, Plaintiff argues that he is not required to prove an actual FCA violation, but need only have a reasonable and good faith belief in possible fraud. Dkt. 33 at 4-5.

Before the 2009 amendments to section 3730(h), the Ninth Circuit required that the employee "must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action" in order to be engaged in "protected conduct." *See Mooney,* 118 F.4th at 1091 (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)). *Mooney,* however, held that "*Hopper*'s 'investigating' requirement does not apply when the plaintiff alleges that he was 'discharged … because of … other efforts to stop 1 or more violations of [the FCA] …" *Mooney*, 118 F.4th at 1091.

Here, Plaintiff alleges that he undertook various acts "to stop what he reasonably believed were violations of the False Claims Act":

5

     a) Investigated and documented a multi-year pattern of VMware licensing fraud by Kaiser Aluminum, a defense-supply contractor.

     b) Reported those findings to VMware Compliance and Senior Manager Neil Velasco, who validated the audit.

     c) Refused Manager Hoke's directive to process knowingly false self-reported license counts, after warning Manager Brewster that doing so could implicate VMware in wire-fraud felonies.

     d) Informed Kaiser's procurement lead that the renewal could not proceed until compliance issues were resolved.

     e) After VMware management reviewed clear evidence of Kaiser's DFARS/NIST noncompliance, refused to participate in further renewals that would perpetuate the fraud.

Dkt. 1 ¶ 52.

Where, as here, a plaintiff alleges he undertook efforts to stop a FCA violation, to satisfy the "protected conduct" requirement "an employee's efforts to stop 1 or more violations need not lead to a lawsuit or to the distinct possibility of a lawsuit" and therefore "the employee should not be required to be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *Mooney*, 118 F.4th at 1091-92 (internal quotation marks, emphasis, and citations omitted). Accordingly, to the extent VMware's argument that Plaintiff was not engaged in protected conduct because he was not "investigating" fraud (*see* Dkt. 17 at 9-10, 10-12) is inconsistent with the present state of the law as expressed in *Mooney*, the Court rejects that argument.

Instead, the Court applies the test articulated in *Mooney* for a situation where, as here, Plaintiff alleges he was trying to stop a FCA violation. Under that test, "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Mooney*, 118 F.4th at 1091 (quoting *Moore*, 275 F.3d at 845). In *Mooney,* the Ninth Circuit held that *Moore*'s test for the "protected conduct" element "continues

6

to apply following the 2009 amendment" to the FCA. *Mooney*, 118 F.4th at 1092.

The Ninth Circuit has noted that "this test does not set a high bar." *Id.* The subjective component requires only that the employee have a good faith belief "that the employer is *possibly* committing fraud against the government," and "the employee need not know for certain that the employer has committed fraud." *Id.* (emphasis in original, citation omitted). The objective component is satisfied where "a reasonable employee in the same or similar circumstances *might* believe [] that the employer is *possibly* committing fraud against the government." *Id.* (emphasis in original, citation omitted).

Although the applicable test for "protected conduct" "does not set a high bar," the Complaint in this case fails to allege sufficient facts to clear the bar. Plaintiff's claim for retaliation under the FCA must give VMware "fair notice of what the claim is and the grounds upon which it rests." *Layton v. Terremark No. Amer.*, No. 5:13-cv-03093-PSG, 2014 WL 2538679, at *7 (N.D. Cal. June 5, 2014); Fed. R. Civ. P. 8(a).[2] The Complaint does not do so because it does not contain sufficient facts explaining why Plaintiff in good faith and reasonably believed that VMware might be committing fraud against the government.

The Complaint alleges that in Kaiser's role as "a supplier of critical components for the F-35 Joint Strike Fighter and other U.S. defense platforms," Kaiser "handles Controlled Unclassified Information (CUI) and is subject to the federal data-handling requirements set forth in 32 C.F.R. § 2002." Complaint ¶ 23. The Complaint further alleges that Kaiser's IT systems "must comply with the Defense Federal Acquisition Regulation Supplement (DFARS) 252.204-7012 and NIST Special Publication 800-171." *Id.*

According to the Complaint, Kaiser licensed technology from VMware, and "VMware assigned Plaintiff to manage the renewal and infrastructure modernization" for Kaiser. *See* Complaint ¶ 23; *see also id.* ¶ 17. Plaintiff alleges that in the course of this work, he discovered

---

[2] Complaints alleging a FCA violation are generally subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), but those heightened pleading requirements do not apply to retaliation claims under the FCA. *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 907 (9th Cir. 2017) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008)).

7

that Kaiser "was still running production workloads on legacy infrastructure" and had deployed "ROBO licenses" to more sites than authorized by "VMware's usage restrictions." *Id.* ¶ 25.

The Complaint elaborates that more than the authorized number of "ROBO licenses" were deployed at Kaiser's Trentwood data center (*id.*), that "[t]he same facility housed an idle $2 million VMware Cloud Foundation (VCF) on VxRail system … left unused while Kaiser continued operating on mislicensed architecture" (*id.* ¶ 27), and that "[t]he Trentwood facility is where aluminum components for the F-35 Joint Strike Fighter are manufactured" (*id.* ¶ 28). According to the Complaint:

> The VCF system in that facility included NIST-compliant security controls and automated compliance validation, yet remained idle. Despite having more than twice the required capacity. Kaiser continued to run F-35 production workloads on ROBO-licensed hosts with no equivalent safeguards—placing Controlled Unclassified Information (CUT) at heightened risk.

*Id.* Plaintiff alleges that he "uncovered" other "vulnerabilities" in Kaiser's F-35 manufacturing systems." *Id.* ¶ 29. The Complaint also refers repeatedly to alleged "wire fraud." As one example, it alleges that "Plaintiff further identified a pattern of interstate wire fraud" in which "Kaiser transmitted false license counts" to VMware. *Id.* ¶ 30.

Plaintiff alleges that he "flagged fraudulent licensing, cybersecurity gaps, and SEC-relevant disclosure issues" to his supervisor and escalated his findings within VMware when his supervisor did not act. *Id.* ¶ 32. After further communications within VMware (*id.* ¶¶33-35), Plaintiff told Kaiser that a standard renewal of its license was not possible because Kaiser was not in compliance and sent his "audit master-map" to Kaiser. *Id.* ¶ 36. The Complaint sums up this series of events as follows:

> Plaintiff refused [VMware manager] Hoke's directive to accept Kaiser's self-reported license counts because submitting data he knew to be false – while systems handling F-35 data remained exposed – would constitute wire fraud and potentially false claims and fraud against the United States. With Kaiser subject to DFARS requirements for handling Controlled Unclassified Information ("CUI"), knowingly falsifying compliance data exposed all participants to potential federal criminal liability.

*Id.* ¶ 37.

8

The Complaint attempts to link Kaiser's license from VMware to Kaiser's F-35 program, in an apparent attempt to link Kaiser's "license fraud" on VMware to some type of government claim, but fails to adequately allege such a connection. At most, Plaintiff's allegations show that he undertook various actions within VMware because he was concerned that Kaiser, a government contractor that is subject to various federal requirements for the handling of Controlled Unclassified Information, was not complying with the terms of its license from VMware and was using outdated VMware technology at a facility involved with Kaiser's F-35 production activities. The allegations of the Complaint fail to connect the dots between Kaiser's alleged "licensing fraud" on VMware (*see* Complaint ¶ 52) and any false claim made to the government by anyone, much less by VMware. Accordingly, the Complaint does not set forth sufficient facts to satisfy *Mooney*'s test for "protected conduct," which requires facts showing that (1) Plaintiff had a good faith belief that his employer —VMware—was possibly committing fraud against the government" and that (2) "a reasonable employee in the same or similar circumstances *might* believe [] that the employer is *possibly* committing fraud against the government." *See Mooney*, 118 F.4th at 1092 (emphasis in original).

### 2. VMware's knowledge of protected activity by Plaintiff

VMware argues that Plaintiff fails to plausibly allege that VMware knew that he had engaged in protected activity. Dkt. 17 at 10-13. As explained in the preceding paragraph, Plaintiff has not plausibly alleged that he was engaged in protected conduct, and it follows that he has also failed to plausibly allege VMware's knowledge of any protected conduct by Plaintiff.

### 3. Conclusion on first cause of action

Accordingly, the first cause of action for retaliation in violation of the FCA is **DISMISSED.** Because it is not clear that the Complaint's deficiencies cannot be cured by amendment, the Court grants Plaintiff **LEAVE TO AMEND**. *Eminence Capital, Inc.*, 316 F.3d at 1052.

### C. Other causes of action

The Court has focused on Plaintiff's FCA cause of action because Plaintiff takes the position in the Complaint that federal question jurisdiction under 28 U.S.C. § 1331 exists based on

that cause of action and that the other claims are subject to supplemental jurisdiction under 28 U.S.C. § 1367(a). Complaint ¶¶ 4-5.[3] However, Plaintiff's third cause of action for civil conspiracy and fourth cause of action for wrongful termination refer to the FCA as well as state law. *See, e.g., id.* pp. 20, 22; *id.* ¶¶ 84, 90. The Court has therefore considered whether those causes of action, to the extent such claims are legally viable,[4] might create an independent basis for federal question jurisdiction. The Court concludes that to the extent these other causes of action derive from Plaintiff's FCA retaliation claim, they are insufficient for the reasons discussed in section III.B. as to why the underlying FCA claim is deficient. *See United States v. Wal-Mart Stores East, LP*, 858 Fed. App'x 867, 879-80 (6th Cir. 2021) (holding that FCA claims failed to meet the relevant pleading standards "which means [the] conspiracy claim fails as well"); *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) ("plaintiff's cause of action for wrongful termination in violation of public policy fails because it is derivative of plaintiff's statutory claim" that the court found inadequate).

If, following amendment, Plaintiff is unable to state a claim arising from federal law, the Court will decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [brought under supplemental jurisdiction] if … the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, the Court at this time does not reach the Defendants' arguments for dismissal of the second, third, and fourth causes of action. If Plaintiff

---

[3] The Complaint does not invoke diversity jurisdiction under 28 U.S.C. § 1332. Given Plaintiff's *pro se* status, the Court has *sua sponte* considered whether diversity jurisdiction may exist but concludes it does not. Plaintiff alleges that he is an Austrian citizen and U.S. permanent resident who resides in California. Complaint ¶ 7. The Complaint's allegations indicate that several of the Defendants would also be considered citizens of California for purposes of diversity jurisdiction. *See id.* ¶ 8 (stating that VMware has its principal place of business in California); *id.* ¶¶ 10, 12 (stating that Defendants Brewster and Mills reside in California). Accordingly, the requirement for complete diversity of citizenship is not met. *See* 28 U.S.C. § 1332(a)(2) ("the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State").

[4] *See, e.g., Vasile v. Flagship Financial Grp., LLC*, No. 2:12-cv-02912-KJM-CKD, at *4 (E.D. Cal. Aug. 19, 2013) ("The court finds that the plain language of sections 3729 and 3730 of the FCA does not support a cause of action for conspiracy to retaliate.")

1 files a First Amended Complaint containing those causes of action, Defendants can reassert their

2 existing arguments regarding the state law claims as appropriate.

## IV. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

1. VMware's motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to the first cause of action for retaliation in violation of the False Claims Act.
2. To the extent the third cause of action for civil conspiracy and fourth cause of action for wrongful termination in violation of public policy are based on Plaintiff's deficient FCA claim, VMWare's motion to dismiss those causes of action is **GRANTED WITH LEAVE TO AMEND.**
3. The remaining arguments for dismissal in the motions to dismiss at Dkt. 17, 18, and 44 are **DENIED WITHOUT PREJUDICE** to Defendants' ability to renew those arguments in response to a First Amended Complaint filed by Plaintiff.
4. If Plaintiff has a proper basis to believe that amendments will address the deficiencies identified in this order, he may file a First Amended Complaint ("FAC") no later than **December 31, 2025.** The FAC must attach as an exhibit a redline comparing the FAC to the original complaint.
5. Defendants must file a response to the FAC no later than **fourteen (14) days** after the FAC is filed.
6. If any Defendant responds by filing a motion to dismiss the FAC, the normal briefing schedule of Civil Local Rule 7-3 will apply.  The Court will inform the Parties if a hearing is necessary.
7. The Court informs Plaintiff that the Federal Pro Se Program at the San Jose Courthouse provides free information and limited-scope legal advice to pro se litigants in federal civil cases.  The Federal Pro Se Program is available by appointment and on a drop-in basis. The Federal Pro Se Program is available at Room 2070 in the United States Courthouse in San Jose (Monday to Thursday 9:00 a.m.–4:00 p.m.) or by calling (408) 297-1480.  In addition, the Court offers a pro se

handbook free of charge; a copy may be downloaded from https://cand.uscourts.gov/pro-se-handbook/ or obtained from the Clerk's Office.

**SO ORDERED.**

Dated: November 25, 2025

_____
SUSAN VAN KEULEN
United States Magistrate Judge