UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEBASTIAN RAKO,

        Plaintiff,

    v.

VMWARE LLC, et al.,

        Defendants.

Case No.  25-cv-05142-SVK

**ORDER ON: (1) VMWARE DEFENDANTS' AND KAISER DEFENDANTS' MOTIONS TO DISMISS; (2)  PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY; AND (3) PLAINTIFF'S MOTION FOR JUDICIAL ESTOPPEL**

Re: Dkt. Nos. 71, 72, 89, 93

The background of this case is discussed in more detail in the Court's November 25, 2025 order on Defendants' motions to dismiss the original Complaint.  Dkt. 66 (the "11/25/25 Order").  In summary, Plaintiff Sebastian Rako, appearing *pro se*, worked as a sales professional for Defendant VMware LLC ("VMware") from approximately August 2021 until June 2022.  Plaintiff claims that VMware suspended and then terminated his employment after he reported that Defendant Kaiser Aluminum Corporation ("Kaiser") had defrauded VMware under a license issued by VMware to Kaiser.  The Defendants in this action are VMware and its employees Michael Brewster and Jeremy Hoke and Kaiser and its employees Mike Wood and Tami Mills.

In the 11/25/25 Order, the Court granted-in-part and denied-in-part the Defendants' motions to dismiss the original Complaint, and the Court gave Plaintiff leave to file an amended complaint to attempt to address the deficiencies identified in that Order.  Dkt. 66.  Plaintiff thereafter timely filed a First Amended Complaint.  Dkt. 67 (the "FAC").  The FAC contains four causes of action:  (1) retaliation in violation of the False Claims Act (31 U.S.C. § 3730(h)); (2) retaliation in violation of California Labor Code § 1102.5; (3) civil conspiracy to retaliate against whistleblower; and (4) wrongful termination in violation of public policy.  *Id.*  The first, second, and fourth causes of action are asserted against VMware only.  The third cause of action is

United States District Court
Northern District of California

asserted against all other Defendants.  All Parties have consented to the jurisdiction of a magistrate judge.  Dkt. 4, 11, 14, 46.

Now before the Court are the following motions:  (1) the motion to dismiss the FAC filed by VMware, Brewster, and Hoke (Dkt. 71 – "VMWare motion to dismiss"); (2) the motion to dismiss the FAC filed by Kaiser, Wood, and Mills (Dkt. 72 – "Kaiser motion to dismiss); (3) Plaintiff's motion for leave to file a sur-reply in response to the reply brief filed in support of each motion to dismiss (Dkt. 89); and (4) a motion filed by Plaintiff styled as a "motion for judicial estoppel based on VMware's contradictory positions in concurrent federal litigation" (Dkt. 93).  These motions are suitable for determination without a hearing.  Civ. L.R. 7-1(b).

For the reasons that discussed below, Plaintiff's motion for leave to file a sur-reply is **GRANTED,** Plaintiff's motion for judicial estoppel is **DENIED**, and the FAC is **DISMISSED WITHOUT LEAVE TO AMEND.**

## I.      DISCUSSION

### A.      Plaintiff's motion for leave to file a sur-reply

After Defendants filed replies in support of both motions to dismiss, Plaintiff filed a motion for leave to file a sur-reply on each motion, arguing that the reply briefs "raise new matter that Plaintiff had no opportunity to address in his Oppositions."  Dkt. 89.  The "new matter" identified by Plaintiff consists of:  (1) VMware's accusation that Plaintiff has violated Rule 11; (2) VMware's characterization of Plaintiff's "copyright framework" as "new facts" outside the FAC; and (3) Defendants' contradictory positions on Plaintiff's third cause of action for conspiracy, with VMware arguing that Plaintiff abandoned this cause of action by not addressing it in his opposition to VMware's motion to dismiss and Kaiser substantively addressing the third cause of action.  *Id.*  VMware filed an opposition to Plaintiff's motion for leave to file a sur-reply, arguing, among other things, that the supposedly "new matter" in its reply brief consisted solely of responses to new and unanticipated information Plaintiff included in his opposition.  Dkt. 92.

Although the Court does not endorse Plaintiff's characterization of the Defendants' reply briefs, in light of his pro se status, the Court **GRANTS** Plaintiff's motion for leave to file a sur-reply.  The sur-reply attached to Plaintiff's motion for leave is **DEEMED FILED**, and the

United States District Court
Northern District of California

Court has considered the arguments in that brief in preparing this order on Defendants' motions to dismiss the FAC.

### B.    Plaintiff's motion for judicial estoppel

Plaintiff's "Motion for Judicial Estoppel" argues that positions taken by VMware in this litigation are inconsistent with positions VMware has taken in other litigation and asks the Court to "preclude VMware from advancing positions in this action that contradict those it has simultaneously advanced" in litigation in the District of Delaware and before Judge Tigar in this District. Dkt. 93 at 3. Plaintiff also argues that "[t]he pending motions to dismiss should be evaluated without reliance on the contradicted arguments." *Id.* VMware opposes the motion for judicial estoppel and seeks sanctions. Dkt. 95.

For the reasons explained in the Court's order on Plaintiff's earlier motion concerning judicial estoppel, it is procedurally improper to seek an advisory opinion on judicial estoppel. Dkt. 36 at 2. The present motion for judicial estoppel suffers from the same defect to the extent it seeks a ruling on judicial estoppel in the abstract. *See, e.g.,* Dkt. 93 at 12 (requesting that "this Court preclude VMware from advancing positions in this action that contradict the enforcement framework it has affirmatively adopted in Delaware and in *VMware v. Kenvue* in this district").

By contrast, as explained in the Court's order at Dkt. 36, Plaintiff may properly make judicial estoppel arguments in opposition to properly-noticed motions. Plaintiff has done so by setting forth arguments in his opposition to VMware's motion to dismiss. *See* Dkt. 77 at 10-13. To the extent Plaintiff's motion for judicial estoppel seeks to bar VMware from taking contradictory positions on the pending motions to dismiss, the request for judicial estoppel fails on the merits. In deciding whether to apply judicial estoppel, a court must consider: (1) whether "a party's later position [is] clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1045 (9th Cir. 2016) (citations and internal quotation marks omitted).

Plaintiff has failed to establish any of the required elements for judicial estoppel. The

3

purportedly "inconsistent" statements cited by Plaintiff are from VMware's litigation against Siemens AG in the District of Delaware and from VMware's litigation against Kenvue in this District.  Plaintiff essentially argues that VMware customers Kaiser, Siemens, and Kenvue all engaged in unauthorized software deployment, but whereas VMware sued Simens and Kenvue for copyright infringement, VMware disregarded Kaiser's alleged non-compliance with the license.  *See* Dkt. 93; *see also* Dkt. 77 at 10-13.  Plaintiff has not demonstrated that VMware's alleged decision to treat different customers differently is improper, nor has he demonstrated that the cited statements are clearly inconsistent.  Plaintiff has not shown that VMware succeeded in persuading the courts in the earlier cases to accept its position.  He has also failed to show VMware would derive an unfair advantage or impose an unfair determinant on opposing parties.  To the contrary, Plaintiff's main argument is that VMware is hurting itself by taking inconsistent positions.  *See* Dkt. 77 at 12-13 (arguing that VMware's position in this case "is the construction of a litigation record that will haunt VMware in every future enforcement action" and "hands ammunition to Siemens' counsel" and to future infringers).

Accordingly, Plaintiff's motion at Dkt. 93 requesting that VMware be judicially estopped from making certain arguments is **DENIED.**  VMware's request for sanctions under the Court's inherent authority in connection with Plaintiff's motion for judicial estoppel (*see* Dkt. 95 at 18-20) is **DENIED**.

Although the Court does not find that VMware is judicially estoppel from making certain arguments in favor of dismissal of the FAC, in ruling on VMware's motion to dismiss the Court has nevertheless considered the arguments made in Plaintiff's opposition brief as to VMware's allegedly inconsistent positions.  *See* Dkt. 77 at 10-13.

### C.    Motions to Dismiss

#### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  In deciding whether the plaintiff has stated a claim, the

United States District Court
Northern District of California

4

United States District Court
Northern District of California

court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2. First Cause of Action: Retaliation in violation of False Claims Act (31 U.S.C. § 3730(h))

The 11/25/25 Order discussed in detail Plaintiff's first cause of action, which is asserted against VMware only and alleges that VMware retaliated against Plaintiff in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). *See* Dkt. 66 at 4-9. As explained in that Order, an employee must prove three elements in a FCA retaliation claim: (1) the employee engaged in conduct protected under the statute; (2) the employer knew that the employee engaged in protected conduct; and (3) the employer discriminated against the employee because she engaged in protected conduct. *Mooney v. Fife*, 118 F.4th 1081, 1089 (9th Cir. 2024). The Court applies the test articulated in *Mooney* for a situation where, as here, Plaintiff alleges he was trying to stop an FCA violation. Under that test, "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Mooney*, 118 F.4th at 1091 (quoting *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 845 (9th Cir. 2002)).

In the 11/25/25 Order, the Court found that the original Complaint in this case failed to

5

United States District Court
Northern District of California

allege sufficient facts to set forth a plausible claim under the FCA.  Dkt. 66 at 4-9.  Specifically, the Court held that the original Complaint did not contain sufficient facts explaining why Plaintiff reasonably believed in good faith that VMware might be committing fraud against the government.  *Id.*   As the Court noted:

> The Complaint attempts to link Kaiser's license from VMware to Kaiser's F-35 program, in an apparent attempt to link Kaiser's "license fraud" on VMware to some type of government claim, but fails to adequately allege such a connection. At most, Plaintiff's allegations show that he undertook various actions within VMware because he was concerned that Kaiser, a government contractor that is subject to various federal requirements for the handling of Controlled Unclassified Information, was not complying with the terms of its license from VMware and was using outdated VMware technology at a facility involved with Kaiser's F-35 production activities.  The allegations of the Complaint fail to connect the dots between Kaiser's alleged "licensing fraud" on VMware (*see* Complaint ¶ 52) and any false claim made to the government by anyone, much less by VMware.

*Id.* at 9.  Thus, although the test for protected conduct "does not set a high bar" (*Mooney*, 118 F.4th at 1092), the original Complaint failed to clear the bar.  Dkt. 66 at 9.  The Court further concluded that because Plaintiff had not plausibly alleged that he was engaged in protected conduct, he had also failed to allege VMware's knowledge of any protected conduct by Plaintiff, which is another element of a claim for retaliation under the FCA.  *Id.*

Plaintiff acknowledges that "[t]his Court dismissed the original Complaint with specific guidance:  the FCA retaliation claim required facts supporting Plaintiff's belief that VMware might be enabling fraud."  Dkt. 77 at 1; *see also* Dkt. 78 at 1.  He understood that he needed to include facts "explaining why that belief was both subjectively and objectively reasonable." Dkt. 77 at 1; *see also* Dkt. 78 at 1.  Plaintiff claims he did so by adding allegations to the FAC that were aimed at addressing the deficiencies identified in the 11/25/25 Order, including but not limited to sections literally entitled "CONNECTING THE DOTS – SUMMARY" and "CONNECTING THE DOTS."  *See* FAC at ¶¶ 4-8, 125-156.  However, having carefully reviewed the FAC under the applicable legal standards discussed above and in the 11/25/25 Order and having considered the Parties' arguments in their briefs, the Court concludes that the FAC still does not contain facts to plausibly allege that Plaintiff had a good faith and reasonable belief that

his employer, VMware, was involved in a false claim made to the government.

An overarching problem with the matters alleged in the FAC is that a claim under the FCA requires that the employee have a good faith and reasonable belief that his *employer* was committing fraud against government. *See Mooney*, 118 F.4th at 1091. Plaintiff's employer was VMware. Although Plaintiff identifies conduct by VMware that he thought "presented clear Sarbanes-Oxley (SOX) risk" (*see, e.g.,* FAC ¶¶ 26-27), he does not allege that he suspected, much less reported, that VMware itself had specifically made a false claim to government. Moreover, the FAC alleges that "VMware was a federal contractor holding contracts with DOD, DOJ, DOE, FBI, and other agencies" (FAC ¶ 144), but the FAC does not contain any allegations that Plaintiff believed VMware presented any false claim to the government under those contracts (*see* FAC ¶ 144-146). Instead, Plaintiff's retaliation claim focuses on the allegedly fraudulent behavior of VMware's customer, Kaiser. *See* FAC ¶ 146 ("Kaiser—the defense contractor whose fraud Plaintiff discovered and refused to enable—requested Plaintiff's removal" and "VMware complied"); *see also* FAC ¶ 179 (overview of "Protected Acts").

Even if a claim under the FCA's anti-retaliation provision is available to an employee who suspects that his employer's customer was making false claims to the government, Plaintiff has again failed to plead facts plausibly supporting such suspicions. The facts pleaded in the FAC are that Kaiser was among the client accounts that VMware assigned to Plaintiff. FAC ¶ 28. Kaiser is a defense contractor, and Plaintiff alleges that as such Kaiser is subject to various data-handling requirements. FAC ¶ 28 (alleging that Kaiser is subject to "the federal data-handling requirements set forth in 32 C.F.R. § 2002" and that Kaiser's IT systems "must comply with the Defense Federal Acquisition Regulation Supplement (DFARS) 252.204-7012 and NIST Special Publication 800-171"). Kaiser had a license from VMware with a support component that was up for renewal. FAC ¶ 29 and n.2. According to Plaintiff, "VMware does not compensate account managers for renewals," so an impending renewal is "the account manager's opportunity to convert existing perpetual licenses into higher-tier subscriptions or Enterprise License Agreements (ELAs)." FAC ¶¶ 28-29. Plaintiff regarded it as his job and duty "to find and generate revenue," including by "non-compliance reconciliation—identifying customers who are out of compliance

and bringing them into compliance through payment of arrears." FAC ¶ 32.

Plaintiff alleges that in the course of performing a VMware-mandated "Business As Usual" (BAU) analysis for Kaiser's renewal, he found that Kaiser was "still running production workloads on legacy infrastructure" rather than a more advanced VMware Virtual Cloud Foundation ("VCF") system it had licensed from VMware. *See, e.g.,* FAC ¶¶ 39, 43. He also alleges that he discovered that Kaiser had deployed "ROBO licenses" to sites where it was not authorized to do so under "VMware's usage restrictions." *See, e.g.,* FAC ¶¶ 41-42. Plaintiff concluded that this "underlicensing" was "a material breach" of Kaiser's license from VMware "amounting to hundreds of thousands of dollars—software piracy by contract definition." FAC ¶ 44. Much of the FAC focuses on Kaiser's alleged transmission of "false license counts" to VMware. *See, e.g.,* FAC ¶¶ 1, 50, 75.[1]

One of the Kaiser locations where Plaintiff alleges that Kaiser deployed more than the authorized number of ROBO licenses was Kaiser's Trentwood data center. FAC ¶¶ 41, 45. According to Plaintiff, "[t]he Trentwood facility is where aluminum components for the F-35 Joint Strike Fighter are manufactured." FAC ¶ 48. Plaintiff alleges that because Kaiser "continued to run F-35 production workloads on ROBO-licensed hosts" that had "no equivalent safeguards" to the VCF system at the facility that "remained idle," Kaiser "plac[ed] Controlled Unclassified Information (CUI) at heightened risk." FAC ¶ 48. Plaintiff also claims to have uncovered "more than 1,000 critical or high-severity vulnerabilities on F-35 manufacturing systems." FAC ¶ 49.

From these allegations regarding an F-35 manufacturing system that was "riddled with vulnerabilities," the FAC pivots to allegations that the Department of Justice announced in October 2021 that it would "use the False Claim Act to pursue cybersecurity misrepresentations"

---

[1] Plaintiff devotes a significant portion of his opposition to VMware's motion to dismiss the FAC to arguing why VMware could and should have made a claim against Kaiser for copyright infringement, including pointing out the VMware has sued another customer, Siemens AG, in the District of Delaware alleging copyright infringement based on unauthorized software deployment. *See generally* Dkt. 77. As noted in section II.B. above, in ruling on the motions to dismiss, the Court has considered Plaintiff's arguments about VMware's purportedly inconsistent positions in other litigation. Beyond that, however, the argument about whether Kaiser's conduct constitutes copyright infringement is not relevant to the issue of whether the FAC (which does not contain a claim for copyright infringement) states a claim.

8

United States District Court
Northern District of California

and would target all individuals involved in such misconduct.  FAC ¶ 51; *see also* FAC ¶ 69. Plaintiff alleges that "[i]f VMware enabled Kaiser to continue its fraudulent conduct—papering over six years of ROBO misuse, ignoring 1,000+ vulnerabilities on F-35 systems, and transmitting false compliance data—VMware would be placing itself squarely in DOJ's crosshairs.  Not as a bystander, but as a co-conspirator."  FAC ¶ 70.

Whether unintentionally or by design, Plaintiff attempts to blur the distinction between the "false" license counts Kaiser "submitted" to VMware (which are alleged in the FAC) and any "false" cybersecurity compliance data "submitted" to the government (which is not identified in the FAC).  In other words, Plaintiff tries to transform what he contends was Kaiser's "licensing fraud" (FAC ¶ 179a) into fraud on the government.  But the FAC lacks any facts explaining what type of "cybersecurity misrepresentations" or "false compliance data" he might have suspected Kaiser was transmitting *to the government*.  Similarly, Plaintiff repeatedly alleges that he resisted pressure from VMware to engage in "falsification of business records" (*see, e.g.,* FAC ¶¶ 5-8, 73, 77). but the FAC does not contain any allegations that VMware's business records concerning its license to Kaiser were provided to the government in connection with any government claim.

The allegations of the FAC do not state a plausible claim that Plaintiff suspected that Kaiser was making false claims to the federal government, nor do they show any suspected involvement by VMware in such activity.  In other words, Plaintiff fails to link Kaiser's alleged non-compliance with the terms of its license from VMware with the type of cybersecurity non-compliance that he alleges was the subject of increased government scrutiny.  *See, e.g.,* FAC ¶¶ 51, 69.  As explained in the 11/25/25 Order, Plaintiff is not required to show that he was "investigating matters which are calculated, or reasonably could lead, to a viable FCA action." Dkt. 66 at 6 (quoting *Mooney*, 118 F.4th at 1091-92).  But he is still required to plead facts setting forth a plausible claim that he had a good faith and reasonable belief that his employer was possibly committing fraud against the government.  *Mooney*, 118 F.4th at 1091.

Plaintiff acknowledges in the FAC that he is "not a federal procurement specialist" and claims that "precisely because he lacked expertise in government contracting, the presence of a defense contractor, falsified records, and internal suppression triggered immediate alarm."

FAC ¶ 128. This admission undermines Plaintiff's assertions concerning Kaiser's alleged cybersecurity obligations. Moreover, the Court is not obligated to accept as true Plaintiff's legal conclusions regarding Kaiser's obligations. *Lacano Investments, LLC v. Balash,* 765 F.3d 1068, 1071-1072 (9th Cir. 2014) (court may disregard legal conclusions even if cast as factual allegations). However, the question for the Court to decide is not whether Plaintiff has sufficiently pleaded that Kaiser in fact made a false claim, but whether the FAC sets forth sufficient facts showing that Plaintiff in good faith believed that Kaiser was possibly committing fraud against the government (and that his employer, VMware, was involved) and that a reasonable employee in the same or similar circumstances would share that belief. *See Mooney*, 118 F.4th at 1091-92.

Plaintiff asserts that "'national defense' carries different legal gravity" and claims that his "instinct was the same one any reasonable employee would have: this could lead to federal litigation." FAC ¶ 128. Plaintiff thus appears to invite the Court to infer from Kaiser's position as a government contractor that is alleged to be subject to regulations concerning its handling CUI and that is alleged to have certain "vulnerabilities" in its F-35 manufacturing systems that Plaintiff himself subjectively believed that Kaiser was possibly committing fraud against the government and that a reasonable employee in the same or similar circumstances would share that belief. *See Mooney*, 118 F.4th at 1091. But the link between Kaiser's alleged "licensing fraud" towards VMware and any claim that Plaintiff speculates Kaiser may have submitted to the government is simply too attenuated for a reasonable employee to believe that VMware was possibly involved in committing fraud on the government. *See United States of America, ex rel. Manuel Gallegos v. Jet Propulsion Lab'y*, No. 2:23-cv-06791-AH-AYPx, 2026 WL 795484, at *6 (C.D. Cal. Mar. 19, 2026) (dismissing claim for FCA retaliation without leave to amend where amended complaint failed to allege that anyone in plaintiff's similar circumstances would have had sufficient knowledge about or access to employer's claims to government to reasonably believe they were false or fraudulent). Even drawing all reasonable inferences in Plaintiff's favor, as the Court must do at this early stage of the proceedings, the murky data points identified in the FAC fail to paint a plausible picture that Plaintiff had a good faith and reasonable belief that Kaiser might be making false claims to the government, much less that his employer, VMware, was possibly involved.

Because Plaintiff has not plausibly alleged that he engaged in protected conduct, he has also failed to plausibly allege that VMware knew of such protected conduct. His allegations of complaints to VMware management involved not a suspected false claim made to the government but complaints about issues such as Kaiser's alleged breach of its license agreement with VMware and Sarbanes-Oxley issues. *See, e.g.,* FAC ¶ 27 (alleging that Plaintiff reported "control failures" that presented Sarbanes-Oxley exposure); FAC ¶ 61 (alleging that Plaintiff "flagged fraudulent licensing, cybersecurity gaps, and SEC-relevant disclosure issues to management").

### 3. Other Causes of Action

Like the original Complaint, Plaintiff takes the position in the FAC that the Court has subject matter jurisdiction over the FCA retaliation cause of action under federal question jurisdiction (28 U.S.C. § 1331) and over the other causes of action under supplemental jurisdiction (28 U.S.C. § 1367(a)). FAC ¶¶ 13-14.[2] As with the original Complaint, the second, third, and fourth causes of action in the FAC involve claims under state law, although it appears that Plaintiff is attempting to use an FCA violation as a "predicate" for his claims for civil conspiracy and wrongful termination. *See* FAC ¶¶ 211, 217. For the reasons discussed in the 11/25/25 Order, because Plaintiff has failed to state a claim for retaliation under the FCA, the state law claims are insufficient to the extent they derive from the FCA claim. Dkt. 66 at 10.

The Court cautioned in the 11/25/25 Order that "[i]f, following amendment, Plaintiff is unable to state a claim arising from federal law, the Court will decline to exercise supplemental jurisdiction over the state law claims." *Id.* at 10 (citing 28 U.S.C. § 1367(c)). Because Plaintiff has failed to state a claim arising from federal law, the Court declines to exercise supplemental jurisdiction over the remaining claims in the FAC.

### 4. Conclusion on motions to dismiss

For the foregoing reasons, VMware's motion to dismiss is **GRANTED** as to the first cause of action for retaliation in violation of the False Claims Act. To the extent the third cause of

---

[2] As discussed in the 11/25/25 Order, the Court also considered whether it might have diversity jurisdiction under 28 U.S.C. § 1332 and concluded that it did not. Dkt. 66 at 10 n.5. Plaintiff does not allege otherwise in the FAC or in his opposition to the present motion to dismiss.

11

action for civil conspiracy and fourth cause of action for wrongful termination in violation of public policy are based on Plaintiff's deficient FCA claim, the motions of VMware and Kaiser to dismiss those causes of action are **GRANTED.**  The Court **DECLINES** to exercise supplemental jurisdiction over the remaining causes of action in the FAC.

Although Plaintiff has not expressly requested that he be given leave to amend if the Court grants any part of Defendants' motion to dismiss the FAC, the Court has considered whether it would be appropriate to do so.  As to those areas where the Court grants Defendants' motion to dismiss the FAC, Defendants made the same arguments in their motions to dismiss the original Complaint.  *See, e.g.,* Dkt. 17 at 6-13 (arguments in VMware's previous motion to dismiss as to why FCA claim should be dismissed).  In the 11/25/25 Order on Defendants' motion to dismiss the original Complaint, the Court clearly explained the deficiencies in that pleading, and Plaintiff has acknowledged and attempted to address them in the FAC.  *See* Dkt. 77 at 1; Dkt. 78 at 1; *see also* FAC ¶¶ 4-8, 125-156.  Despite adding additional material to the FAC, Plaintiff has not remedied the defects identified in the 11/25/25 Order, and Plaintiff has not demonstrated in his opposition to the present motions to dismiss that these defects are curable by amendment.

Under these circumstances, the Court concludes that granting Plaintiff further leave to amend would be futile.  Accordingly, the Court's dismissal of the FAC is **WITHOUT LEAVE TO AMEND.**

II.    **CONCLUSION**

For the reasons discussed above, the Court **ORDERS** as follows:

1.  The first cause of action for retaliation in violation of the False Claims Act is **DISMISSED WITHOUT LEAVE TO AMEND**.

2.  To the extent the third cause of action for civil conspiracy and fourth cause of action for wrongful termination in violation of public policy are based on Plaintiff's deficient FCA claim, those causes of action are **DISMISSED WITHOUT LEAVE TO AMEND.**

3.  The Court **DECLINES** to exercise supplemental jurisdiction over the remaining state law causes of action in the FAC**.**

United States District Court
Northern District of California

4. This order terminates Dkt. Nos. 71, 72, 89, 93.

**SO ORDERED.**

Dated: May 12, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

13